UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J. M. T., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:24-cv-01521 |
| v. | § | |
| | § | |
| Martin O'Malley, | § | |
| Commissioner of Social Security,[1] | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

This appeal from an administrative ruling denying social security benefits was referred to the undersigned judge. Dkt. 12, 20. After carefully considering the parties' briefs, Dkt. 10, 18, 21, the record, Dkt. 6, 7, and the applicable law, it is recommended that the Commissioner of Social Security's motion for summary judgment (Dkt. 18) be denied, and the Commissioner's decision be vacated and remanded for further proceedings.

## Background

Plaintiff applied for disability insurance benefits on April 26, 2021, and supplemental security income on June 22, 2021, alleging an onset date of January 15, 2015, which was later amended to April 20, 2015. R.35, 275, 402.

---

[1] The Court is aware that Frank Bisignano is the current Commissioner of Social Security. But no request to substitute Bisignano for O'Malley has been made.

Plaintiff listed the following medical conditions in her disability report: multiple sclerosis ("MS"), trigeminal neuralgia, stroke 2014, chronic kidney lesions, ovarian cysts, degenerative disc disease, arthritis, carpal tunnel syndrome, and depression. *See* R.295. After her applications were denied initially and upon reconsideration, Plaintiff sought and received a hearing before an administrative law judge ("ALJ"), where Plaintiff and a vocational expert testified. R.35, 55-85, 134, 139, 152, 157. After the hearing, the ALJ issued an opinion concluding that Plaintiff did not qualify as disabled. *See* R.32-54.

The ALJ found Plaintiff had not engaged in substantial gainful activity since the onset date. *See* R.38. At step two, the ALJ found that Plaintiff had the following severe impairments: migraines, trigeminal neuralgia, cervical degenerative disc disease, lumbar degenerative disc disease, annular fissure, Tarlov cyst, kidney cyst, and mastoiditis. *Id.* As for Plaintiff's purported MS, the ALJ found it was a non-medically determinable impairment. *See* R.40-41. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that meets or equals a listing. R.41.

After considering the record, the ALJ formulated Plaintiff's residual functional capacity ("RFC") to include light work, as defined in 20 C.F.R. § 416.967(b), with the following exceptions:

> [Plaintiff] can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl.

R.42. Given this RFC, the ALJ found at step four that Plaintiff can perform her past relevant work as a measurement department clerk, an apartment manager, and an administrative clerk. R.47. Based on this conclusion, the ALJ found Plaintiff not disabled and denied her applications for disability insurance benefits and supplemental security income. R.48.

The Social Security Administration Appeals Council denied review, which rendered the decision ripe for this Court's review. *See* R.9; 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## **Legal standard**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not

3

be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

**I.   Legal Framework**

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote

omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *See id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II.   Substantial evidence did not support the ALJ's step-two finding.

Plaintiff challenges the ALJ's step-two finding that MS was not a medically determinable impairment. Dkt. 10 at 13-15. Specifically, Plaintiff argues that the ALJ's opinion ignored evidence of Plaintiff's MS. *See id.*; Dkt. 21 at 5-6. The Commissioner responds that, without a definitive MS diagnosis, Plaintiff failed to meet her burden of establishing a medically determinable impairment. *See* Dkt. 18 at 9-10. In addition, the Commissioner contends that the ALJ properly relied on evidence that Plaintiff's MS was "resolved" and not treated with medicine. *See id.*

5

### A. MS in the hearing and the ALJ's opinion

During the December 2022 hearing, Plaintiff's presentation highlighted her MS, citing Listing 11.09B. R.59. Plaintiff testified about being referred to neurologist Dr. Brian Loftus "to confirm the MS diagnosis." R.64. She understood her diagnosis to be MS and testified that she needed to see an MS specialist. R.76-77. In response to the ALJ's question about MS-related symptoms, Plaintiff mentioned spasticity (twisting and cramping) of her hands and feet, numbness, tingling, and vision problems. R.67. In addition, Plaintiff testified that "[e]xtreme fatigue" forced her to spend many hours lying down. *See* R.69, 73-74. In closing, Plaintiff's counsel attributed Plaintiff's symptoms to MS or a similar "demyelination" condition, described MS as "difficult to diagnose," and highlighted medical exams by Drs. Rajesh Gupta and Brian Loftus that discussed Plaintiff's MS. R.82-84.

The ALJ rejected Plaintiff's MS, finding it was not a medically determinable impairment. *See* R.38, 40-41. The ALJ acknowledged handwritten "MS" notes on an MRI report from April 2014. *See* R.41 (citing R.675, 683). But the ALJ described MS as "a working diagnosis" noted in the record only as a "possible" condition. *See id.* (citing R.1086, 1364, 1377, 1380). In addition, the ALJ discussed several emergency medical records indicating Plaintiff's MS as "Resolved," *see id.* (citing R.811, 818, 833, 846, 850, 855, 859, 870, 896, 965), and found that Plaintiff was not on medicines for MS, *see id.*

6

(citing R.1077, 1191). In particular, the ALJ's analysis found a February 2023 brain MRI "not definitive." *Id.* (citing R.1400). Based on those characterizations of the record, the ALJ found an "absence of objective medical support" for Plaintiff's claimed MS. *See id.*

The ALJ's opinion discussed MS two more times. When considering an April 2021 examination for back pain and leg swelling, the ALJ noted it was not "a disabling multiple sclerosis flare, as [Plaintiff] was ambulatory." R.45 (citing R.964-67). The final mention appeared in the ALJ's discussion of Dr. Gupta's opinion, to which the ALJ assigned no persuasive value because Dr. Gupta's "possible MS" diagnosis conflicted with "the longitudinal record overall" of normal exams. R.46 (citing R.1364-67, 788, 804, 989, 1251, 1303, 1346). And without connecting them to MS, the ALJ acknowledged Plaintiff's testimony about dizziness, spasticity, and fatigue, but found the longitudinal record evinced "normal gait and motor functioning." R.43. According to the ALJ, the RFC incorporated Plaintiff' antalgic gait, tremors, sensory deficits, and strength deficits by including postural limitations. *See* R.43, 46.

**B.   The ALJ's step-two determination regarding MS warrants reversal.**

As Plaintiff argues, the ALJ ignored or misconstrued evidence when evaluating whether MS qualifies as a medically determinable impairment. At step two, establishing a medically determinable impairment requires

7

"objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. To find an impairment, the ALJ must identify conditions that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and not merely rely on a diagnosis, medical opinion, or subjective statement of symptoms. *See id.*; *see also* 42 U.S.C. § 423(d)(3), (d)(5); *Alex G. v. O'Malley*, 2025 WL 1485864, at *4 (S.D. Tex. Jan. 27, 2025) (citing *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009)).

Here, the ALJ relied heavily on Plaintiff's condition of "possible MS" being merely a "working diagnosis" that was "not definitive." *See* R.41, 46. Although the Commissioner argues that a lack of diagnosis is dispositive, *see* Dkt. 18 at 10, some courts have noted that a "definitive diagnosis … is not required" to constitute a medically determinable impairment. *See, e.g., Shidler v. Astrue*, 2011 WL 1103007, at *7 (N.D. Tex. Mar. 24, 2011) (collecting cases).

Regardless, this Court is "not convinced there is a clear absence of an actual diagnosis from an acceptable medical source, … or that the ALJ properly considered the objective evidence related to Plaintiff's alleged MS." *See Lauren A. v. Saul*, 2019 WL 4242248, at *5 (N.D.N.Y. Sept. 6, 2019). As to diagnosis, the ALJ overlooked Dr. Gupta's February 2023 assessment of "*Probable* MS" based on his review of Plaintiff's brain MRIs.[2] R.1404 (emphasis added); R.46

---

[2] Not to mention that, as Plaintiff states, MS is notoriously difficult to diagnose. *See* Dkt. 10 at 13-14; *see also Cury v. Colonial Life Ins. Co. of Am.*, 737 F.

8

(discussing only "*possible* MS" diagnosis) (emphasis added). And when the ALJ did evaluate Dr. Gupta's medical opinions, the conclusion mischaracterized Dr. Gupta's report as "based on … subjective complaints/symptoms, and not based on a medically determinable impairment …." *See* R.46. But the record indicates that Dr. Gupta based his opinion on brain MRIs, not merely Plaintiff's subjective statements. *See* R.1364, 1367, 1404. The ALJ therefore failed to articulate a justifiable basis for discounting Dr. Gupta's diagnosis. Although the ALJ also cited Dr. Patel's opinion as evidence Plaintiff was not on MS medication, that same opinion appears to diagnose Plaintiff with MS. *See* R.1076.

When viewed against the entire record, the ALJ's opinion "suggests a lack of familiarity with or appreciation of multiple sclerosis." *See DeLeon v. Berryhill*, 2017 WL 1205573, at *5 (D. Idaho Mar. 31, 2017). MS is a "chronic, inflammatory, degenerative disease that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord." *Id.* at *4 (quoting Listing 11.00N(1)). It is an "incurable, progressive disease," which can manifest as relapsing-remitting, with cycles of remission and exacerbation, or as chronic and progressive. *See id.* at *5; *see also Lovin v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1215475, at *16 (N.D. Ohio Mar. 11, 2022), *adopted by* 2022

---

Supp. 847, 856 & n.9 (E.D. Pa. 1990) (MS "cannot be diagnosed with one hundred percent certainty" except by autopsy).

WL 1212821 (N.D. Ohio Apr. 25, 2022). Symptoms differ widely between individuals and can include "impairment[s] in muscle coordination, strength, balance, sensation, and vision." *See DeLeon*, 2017 WL 1205573, at *4. Physical symptoms can include spasticity, spasms, imbalance, gait disturbance, tremor, fatigue, dizziness, and numbness. *See id.* at *5 (citing Listing 11.00N(2)); *see also Lovin*, 2022 WL 1215475, at *16 (citing *National Multiple Sclerosis Society, Managing Relapses*, available at https://perma.cc/X8SL-AJ8S). MS can also manifest as mental impairments, such as fatigue, vision loss, depression, and deficits in attention, concentration, and memory. *See DeLeon*, 2017 WL 1205573, at *5.

The ALJ's findings do not square with MS's recognized features. For example, the ALJ concluded that Plaintiff did not have MS partly because Plaintiff was "not on medicines for [MS]." R.41 (citing R.1077, 1191). To be sure, those records indicate that Plaintiff was not on MS-*specific* medication, but other evidence shows Plaintiff took medication for symptoms attributable to MS—namely, Adderall for fatigue and cognitive fog. *See* R.297, 1005, 1406; *see also, e.g.,* R.1086, 1115, 1237, 1240 (fatigue diagnoses). The ALJ even acknowledged Plaintiff took Adderall for fatigue but failed to connect that to MS. *See* R.40. This oversight in the ALJ's review of record evidence suggests inadequate consideration of MS.

Also problematic is the ALJ's reliance on emergency room records indicating Plaintiff's MS was "resolved." *See* R.41, 45 (citing R.811 (September 2016); R.818 (January 2017); R.833 (April 2017); R.846 (August 2017); R.850 (January 2018); R.855 (March 2018); R.859 (July 2018); R.870 (May 2019); R.896 (February 2020); R.965 (April 2021)). Neither the ALJ nor the records themselves explained what "resolved" means in the context of an emergency-room-visit medical-history listing for an *incurable* disease like MS.

Significantly, MS can manifest in a relapsing-remitting form that "can be disabling notwithstanding normal activity in periods of remission." *See DeLeon*, 2017 WL 1205573, at *5 (citing *Smith v. Astrue*, 2011 WL 3300086, at *5 (C.D. Cal. July 29, 2011); *see also Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981). "Remission does not mean full recovery," and an "ALJ errs by placing undue reliance on a claimant's periods of remission." *See Lovin*, 2022 WL 1215475, at *16-17 (citing *Parish*, 642 F.2d at 193). "When evaluating MS … the ALJ must consider 'the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities.'" *Id.* at *17 (citing *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990)).

Against that backdrop, the notation in Plaintiff's records that MS was "resolved" could simply mean that Plaintiff was not symptomatic *at that moment*. That view is fully consistent with remission periods experienced by

11

individuals afflicted with the relapsing-remitting form of MS. *See id.* The ALJ's opinion does not address these issues.

Indeed, "the Court's review of the record reveals a longitudinal aspect to Plaintiff's alleged MS" that is incompatible with the ALJ's findings. *See Lauren A.*, 2019 WL 4242248, at *5. Notably, the ALJ found "the longitudinal record" documented a "normal gait and motor functioning" and other asymptomatic exams. *See* R.43. But the ALJ's opinion fails to fully acknowledge record evidence suggesting periodic MS symptoms and their progression. *See Lovin*, 2022 WL 1215475, at *17. For example, as early as April 2014, a brain MRI showed signs of a white matter disease that may have resulted from demyelination. R.596, 675. In May 2014, Dr. Gary Kraus noted that Plaintiff's brain MRI showed progression in white matter abnormality compared to a February 2012 MRI. R.684. In 2017, Plaintiff presented with tremors and blurred vision. R.832, 845.

In February 2020, Plaintiff was seen for balance and gait problems and ambulated with a walker. R.916. In April 2021, Plaintiff presented with back pain and reported difficulty walking, and the treating physician determined it was not "a disabling multiple sclerosis flare" after considering her history of MS, because she was ambulatory in the clinical setting. R.967. Dr. Nimesh Patel examined Plaintiff for back pain in February 2022 and included MS in his assessment, noting it was "stable" but advising Plaintiff to follow up with

neurology in a month. R.1076-77. Two months later, Dr. Loftus treated Plaintiff for a migraine, diagnosed fatigue and muscle weakness, *inter alia*, and recommended another brain MRI for possible MS. R.1084-86. Two months after that, Plaintiff complained of back pain, muscle weakness, limited mobility, decreased mental capacity, and nausea at an MS consult. R.1346. The examining NP Shirin Chunara ordered neurology referrals for history of MS and spasticity, and a case management referral for limited mobility. R.1347. NP Chunara saw Plaintiff again in July 2022 for pain with history of MS and recorded back pain and gait problems, which were referred to pain management and neurology. R.1318-19.

Dr. Gupta examined Plaintiff for possible MS in October 2022 and recorded fatigue, spasticity, incontinence, visual disturbance, and antalgic gait. R.1249-51. He assessed "Possible MS" and diagnosed paresthesia, chronic low back pain, and fatigue. R.1251-52. At the recommended six-week follow-up, Dr. Gupta recorded muscle spasms, back pain, fatigue, visual disturbance, dizziness, spasticity, and tremor, and again noted "Possible MS." R.1377-81. In January 2023, Drs. Aaroh Parikh and Prachi Dubey determined Plaintiff's brain MRI showed lesions that "could represent demyelinating disease such as multiple sclerosis," though they acknowledged this finding was not definitive. R.1399-1400. Dr. Gupta compared the January 2023 brain MRI with Plaintiff's previous MRIs and found apparent progression in the number

13

of lesions. R.1404. Dr. Gupta's overall assessment included fatigue, low back pain, visual disturbance, muscle spasms in both lower extremities, and demyelinating changes in the brain, which he diagnosed as "Probable MS," as discussed above, as well as fatigue, back pain, and vision issues. R.1404-05.

Although symptoms Plaintiff reported to physicians "do not transform into medical evidence by mere incorporation into a medical record, … [Plaintiff] is consistent in [her] complaints of exacerbation of MS symptoms," including fatigue, gait deficit, low back pain, muscle spasms, tremors, and visual disturbance. *See Lovin*, 2022 WL 1215475, at *18. There is objective medical evidence—brain MRIs—suggesting a progressive demyelinating disease, such as MS. And there is a longitudinal history of treatment for possible MS, culminating in a medical finding of "Probable MS."

Instead, the ALJ's opinion evaluated Plaintiff's symptoms in isolation, without adequately accounting for the difficulties confirming an MS diagnosis, particularly in its relapsing-remitting form. *See Fisher v. Barnhart*, 393 F. Supp. 2d 343, 346 (E.D. Pa. 2005) ("Although a patient may be in remission, she is not necessarily symptom-free."); *see also Lovin*, 2022 WL 1215475, at *18 (failure to adequately discuss medical evidence showing periodic effects of MS demonstrates overreliance on periods of remission). This deficiency prevents the Court's meaningful review. *See Lovin*, 2022 WL 1215475, at *18 (ALJ's

failure to discuss counterbalancing evidence showing periodic MS exacerbation prevented court's meaningful review).

### C. The ALJ's error was not harmless.

An ALJ's error is harmless when it is "inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Specifically, a step-two error is harmless if the ALJ considers symptoms of the impairment in question at subsequent steps. *See Alex G.*, 2025 WL 1485864, at *7 (collecting cases). In a typical step-two harmless error, an ALJ finds an impairment *medically determinable* and *not severe* but still considers the non-severe impairment in the RFC formulation. *See Moreno v. Comm'r of Soc. Sec. Admin.*, 698 F. Supp. 935, 942 (W.D. Tex. 2023) (citing 20 C.F.R. § 404.1545 (a)(2)).

Here, by contrast, the ALJ found the impairment not medically determinable and therefore made no severity finding. The ALJ addressed certain possible MS symptoms by including postural limitations in the RFC, including "strength and sensation deficits, antalgic gait, and tremors …." *See* R.42-43, 46. But there is no indication the ALJ considered Plaintiff's fatigue, dizziness, vision problems, or spasticity in the RFC—beyond finding her statements about them inconsistent with the record. *See* R.42. Had the ALJ found MS medically determinable and severe, that could have affected the

RFC and, ultimately, the finding on Plaintiff's disability. This means the error was not harmless. Remand is warranted for further consideration of MS.[3]

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Commissioner's motion for summary judgment (Dkt. 18) be **DENIED**, and that the Commissioner's decision be **VACATED** and **REMANDED** for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on July 31, 2025, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

---

[3] The Court need not reach the parties' dispute about the Appeals Council's rejection of newly submitted evidence, *see* Dkt. 10 at 10-13; Dkt. 18 at 5-8, because this evidence can be considered on remand. *Cf. Lauren A.*, 2019 WL 4242248, at *7.